IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

REBECCA ADAMS, LLC                                      CIVIL ACTION
Appellant

VERSUS

TODD T. JANNEY, SR.                                     No. 16-00667-SDD-EWD
Appellee

## RULING

This matter is before the Court on an appeal filed by Rebecca Adams LLC of the

September 29, 2016 *Judgment* of the Bankruptcy Court in the Adversary Proceeding, *In

re: Todd T. Janney Sr. and Shannon C. Janney*, Adv. No. 15-01026.[1]  Appellant, Rebecca

Adams LLC, and Appellee, Todd T. Janney, Sr., have filed their respective *Briefs.*[2]

Appellant has also filed a *Reply*.[3]   For the following reasons, the Bankruptcy Court's

*Judgment* is hereby AFFIRMED.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Rebecca Adams began working for Janney, the sole owner of various healthcare

businesses and clinics in 2004.[4]   She provided accounting, tax, and administrative

services for Todd T. Janney, Sr. ("Janney") and these same business entities until

October of 2008, when the limited liability company she had formed, Rebecca Adams,

LLC ("Adams LLC"), entered a client agreement contract with Janney to continue

providing the same services for these interests.[5]

---

[1] Doc. 1 (*Notice of Appeal*); Doc. 1, p. 3; Doc. 21-2, p. 729 (*Judgment*).
[2] Doc. 9; and Doc. 17.
[3] Doc. 18.
[4] Doc. 21-2, pp. 6-7.  Rebecca Adams testified that she first learned of Janney when she was working for another CPA in 2001.  She was subsequently hired by Janney's mother, Ms. Mohamed, to work directly for Janney and his various corporate entities and companies in 2004.  Doc. 21-2, pp. 214-215.
[5] Doc. 21-2, pp. 215, 218-219.

The October 24, 2008 client agreement contract provided that "[i]n consideration of services rendered, [Janney] agree[d]: that an Open Account has been established . . . and that [he was] liable for and hereby guarantee[d] the payment of a charges incurred."[6] He also agreed that "all information provided is presented honestly, accurately, and is complete, to the best of [his] knowledge."[7] The terms of the 2008 agreement required that "payment [was] due in full within 30 days of tax return or work completion and/or billing, whichever occurs first."[8] Additionally, Janney agreed that a 12% interest rate per annum could be compounded monthly against any outstanding balance.[9]

On February 20, 2013, Adams LLC entered into a "more complex client agreement contract" with Janney, his mother, Paulette Mohamed, and Physicians' Choice Physical Therapy Clinics.[10] Pursuant to the terms of the February 2013 client agreement, the client agreed to "provide The Accountant true and complete information that is vital for The Accountant to perform . . . services in a timely manner."[11] The 2013 agreement also provided that "services [would] be billed to The Client on a bi-monthly basis and [were] due and payable upon receipt."[12] Additionally, "[t]he Client(s) agree[d] to be personally responsible for all accounting costs and expenses incurred by The Client's business(es) and to personally bear guarantor responsibility for payment in full."[13] Like the previous

---

[6] Doc. 21-3, p. 2. (2008 Authorization and Guarantor Responsibility). Todd Janney signed the 2008 Agreement on October 24, 2008.
[7] Doc. 21-3, p. 2.
[8] Doc. 21-3, p. 2.
[9] Doc. 21-3, p. 2.
[10] Doc. 21-3, pp. 209-211. (2013 Tax Accounting Advisor Agreement). Both Todd J. Janney, Sr. and Paulette S. Mohamed signed the Agreement on February 20, 2013. Rebecca Adams testified that she named Ms. Mohamed as an additional client because she thought Janney was going to transfer ownership of two of his companies, Physicians' Choice Physical Therapy and Pain Center, LLC, and Physicians' Choice Therapy Services, LLC, to Ms. Mohamed. Doc. 21-2, pp. 226-227.
[11] Doc. 21-3, p. 210.
[12] Doc. 21-3, p. 210.
[13] Doc. 21-3, p. 210.

contract, the clients agreed that "an interest rate of 12% per annum, compounded monthly, [could] be assessed against" any outstanding balance after the payment due date.[14]

Ultimately, on May 3, 2013, Adams terminated her working relationship with Janney and his companies.[15]

On October 8, 2014, Janney and his wife Shannon filed a joint Chapter 7 Petition in the United States Bankruptcy Court for the Middle District of Louisiana.[16] Subsequently, Rebecca Adams, individually, and Adams LLC filed a *Complaint Objecting to Discharge and to Determine Dischargeability of Debt*.[17]  Plaintiffs claimed that the Debtor's pre-petition debt owed to them, "in the amount of $198,197.00 plus judicial interest, plus costs of this legal proceeding, and attorney's fees" should not be declared non-dischargeable under 11 U.S.C. § 523(a), or, in the alternative, that the Debtor's discharge be denied under 11 U.S.C. §§ 727(a)(3) and (a)(5).[18]

Following a trial on the matter, the Bankruptcy Court issued a *Memorandum Opinion* on September 29, 2016, in which it found that Adams LLC failed to prove that (1) Janney made false representations or committed actual fraud within the meaning of 11 U.S.C. §523(a)(2)(A);  (2) Janney's discharge should be denied for failure to maintain adequate books and records pursuant to 11 U.S.C. §727(a)(3); and (3) Janney's discharge should be denied for failure of the debtor to explain the loss of his personal

---

[14] Doc. 21-3, p. 211.
[15] Doc. 21-2, p. 234.
[16] Doc. 21-1, pp. 12-32.  Bankruptcy Petition No.: 14-11278.
[17] Doc. 21-2, pp. 10-24.
[18] Doc. 21-2, p. 10-20.

assets pursuant to 11 U.S.C. §727(a)(5).[19]  On the same day, the Bankruptcy Court issued a *Judgment* in favor of Janney and against Adams LLC.[20]

Subsequently, on October 5, 2016, Adams LLC filed a *Notice of Appeal* with the United States District Court for the Middle District of Louisiana ("District Court").[21]  The *Amended Designation of Record and Issues on Appeal* along with the Docket Report were filed with the District Court on October 3, 2017.[22]

## II.    LEGAL STANDARD

The Court's jurisdiction to review the bankruptcy court's judgment exists pursuant to 28 U.S.C. § 158(a)(1).[23]  The standard for a bankruptcy appeal by a district court is the same standard applied by a court of appeals reviewing a district court proceeding.  The Court reviews findings of fact for clear error, conclusions of law *de novo*, and mixed questions of law and fact *de novo*.[24]   A finding of fact is clearly erroneous and reversible only if based on the entire record, "the court is left with the definite and firm conviction that a mistake has been committed."[25]  "In conducting this review, the court must give due regard to the opportunity of the bankruptcy judge to determine the credibility of the witnesses."[26]

---

[19] Doc. 21-2, pp. 709-725.
[20] Doc. 21-2, p. 729.  Rebecca Adams' individual claims were dismissed with prejudice before the trial. Doc. 21-2, p. 99.
[21] Doc. 1.
[22] Doc. 21.
[23] 28 U.S.C. § 158(a)(1).
[24] *TMT Procurement Corp. v. Vantage Drilling Co.*, 764 F.3d 512, 519 (5th Cir. 2014)(citations omitted).
[25] *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003)(quoting *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992)).
[26] *Roth Capital Partners, LLC v. Valence Technology, Inc.*, Civil Action No. 14-0949, 2017 WL 4544678, *4 (W.D. Tex. Oct. 10, 2017)(citing *In re Dennis*, 330 F.3d at 701)).

## III.    ISSUES ON APPEAL

In its *Amended Designation of Record and Issues on Appeal*, Adams LLC assigned

the following issues for appeal:[27]

1. Whether the Bankruptcy Court erred by finding that it was not a "false representation" for a Debtor to withhold financial information from his accountant (even when, as here, the accountant is also a creditor).

   a. Specifically, whether the Bankruptcy Court erred in finding that Adams failed to establish that she justifiably relied on Janney's misrepresentations under 11 U.S.C. § 523(a)(2)(A).

   b. Whether the Bankruptcy Court erred in finding that Janney's actions in 2009 and February 2013 were red flags that should have alerted Adams that her reliance on Janney's misrepresentations was unjustified?

   c. Assuming that the Bankruptcy Court correctly concluded that Adams failed to establish justifiable reliance because of her knowledge of events that constituted "red flags" in February 2013, did the Bankruptcy Court err in discharging the entire debt due to Adams, rather than just the portion of the debt that arose after the February 2013 "red flags"?

   d. Whether the Bankruptcy Court erred in concluding that Adams was required to show justifiable reliance on Janney's misrepresentations considering the Supreme Court's recent opinion rendered in *Husky International Electronics, Inc. v. Ritz*, 136 S.Ct. 1581 (2016).

2. Whether the Bankruptcy Court erred in concluding that Janney had not committed fraud under 11 U.S.C. § 523(a)(2)(A) when withholding financial information from his accountant?

---

[27] Doc. 20.  The Court notes that the Appellant designated certain documents as part of the record on appeal that were placed under seal by the Bankruptcy Court.  Doc. 21. While this was permissible under Rule 8009(f) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Court was not permitted to transmit these documents to the Clerk of Court for the Middle District of Louisiana.  Pursuant to Rule 8009(f), the Appellant was required to file a motion with the United States District Court for the Middle District of Louisiana to accept the sealed documents.  Had the motion been granted, then the Appellant would have had to notify the Bankruptcy Court of the District Court's ruling, and then the Clerk of the Bankruptcy Court would have had to "promptly transmit the sealed document[s] to the clerk of court where the appeal is pending."  Fed. R. Bankr. Pro. 8009(f). Because the Appellant failed to comply with Rule 8009(f) of the Federal Rules of Bankruptcy Procedure, the Court has not considered the sealed documents designated as a part of the record on appeal.

3. Whether the Bankruptcy Court erred in holding that Adams failed to meet its burden of proof under 11 U.S.C. § 727(a)(3), in establishing that Debtor failed to maintain adequate books and records and, in particular, whether the Bankruptcy Court's conclusion was erroneous that "Adams presented no evidence supporting a finding that any of the information Janney provided in his bankruptcy filing was incomplete or inaccurate."

4. Whether the Bankruptcy Court erred in holding that Adams failed to meet its burden of establishing Janney's failure to adequately explain the loss of his personal assets in order for his discharge be denied under 11 U.S.C. § 727(a)(5)?

   a. Specifically, whether the Bankruptcy Court erred in concluding that Adams had no standing to assert a cause of action against the Debtor to reverse pierce his corporate veil (converting all corporate assets into Janney's personal assets), finding instead that alter ego claims belong to the bankruptcy estate and therefore, the trustee alone has standing to assert such claims, absent court discretion.

   b. Whether, absent the standing issue, the Bankruptcy Court erred in finding that Adams failed to introduce sufficient evidence to pierce the veil of Janney's wholly owned limited liability companies.

   c. Whether the Bankruptcy Court erred in failing to consider that the Debtor's ownership in his wholly-owned limited liability companies constitute assets of the Debtor's bankruptcy estate and as such, the Debtor's prepetition transfer of all assets contained within those companies, for no consideration, reduced the value of the Debtor's bankruptcy estate assets by diminishing the value of the Debtor's ownership interest in those limited liability companies, which the Debtor was unable to explain, and therefore, the requirements of Section 727(a)(5) were met.[28]

As an initial matter, the Court observes that its review of this appeal is complicated because the foregoing "Issues on Appeal" do not correspond to the arguments developed in Appellant's Brief. Specifically, Appellant fails address the issues set forth in 1(c) and 1(d) regarding "fraudulent representation" in its Briefs. Therefore, these issues shall not be considered by the Court.

---

[28] Doc. 20, pp. 3-5.

## IV.    ANALYSIS

A.    Whether the Bankruptcy Court erred in finding that Adams LLC's reliance on Janney's misrepresentations was not justified due to "red flags"?[29]

Appellant argues that the Bankruptcy Court's decision should be reversed because it established that its debt is nondischargeable under Section 523(a)(2)(A) based upon false representations.  Adams LLC, through its member, Rebecca Adams, argued that it relied on Janney's misstatements of his and his companies' debts, and, as a result, continued to provide services to Janney for partial or no payment.  In its *Ruling*, the Bankruptcy Court found that Adams LLC had proven the first two elements to support its claim stating that "Janney skewed the official financial portrait of himself and his companies by failing to disclose to his accountant numerous debts and, in some cases, not disclosing the correct amount of debts."[30]  However, the Bankruptcy Court found that Appellant failed to satisfy the third and final element necessary to support its claim— justifiable reliance—because  "Adams LLC, through its member, Rebecca Adams, knew of enough 'red flags' to make its unquestioning reliance on Janney's representations about finances unjustifiable."[31]

Adams LLC, as the creditor, has the burden of proof of establishing, by a preponderance of the evidence, that the debt in question should be excepted from discharge.[32]  In order for a debtor's representation to constitute a false representation or false pretense under § 523(a)(2)(A), it "must have been: (1) [a] knowing and fraudulent

---

[29] The standard of appellate review is *de novo* because the Bankruptcy Court's finding is a mixed question of law and fact.

[30] Doc. 21-2, p. 715.

[31] Doc. 21-2, p. 715.

[32] *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

falsehood [ ], (2) describing past or current facts, (3) that [was] relied upon by the other party."[33]   "[A] debtor's silence regarding a material fact can constitute a false representation under section 523(a)(2)(A)."[34]   "When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation; an *overt act* is *not* required."[35]

Appellant argues that the Bankruptcy Court applied the wrong legal standard to determine whether Rebecca Adams was justified in her reliance on Janney's misrepresentations about his businesses' financial situation.   Specifically, Appellant asserts that the Bankruptcy Court erred by applying an objective standard instead of a subjective standard to determine reliance.   Appellant contends that Rebecca Adams' reliance on Janney's misrepresentations was justified, even if that reliance may not have been reasonable under a community standard.   Adams LLC further argues that the Bankruptcy Court should have considered Rebecca Adams and Janney's business relationship through her eyes.[36]

Initially, the Court finds that the Bankruptcy Court did apply the correct legal standard for justifiable reliance.   Section 523(a)(2)(A) of the Bankruptcy Code requires justifiable reliance, which "is an intermediate level of reliance between reasonable reliance and mere reliance in fact."[37]   Justifiable reliance is "determined by looking at the

---

[33] *RecoverEdge v. Pentecost*, 44 F.3d 1284, 1292-93 (5th Cir. 1995)(quoting *Allison v. Roberts (In re Allison)*, 960 F.2d 481, at 483 (5th Cir. 1992)).

[34] *Selenberg v. Bates (In re Selenberg)*, 856 F.3d 393, 399 (5th Cir. 2017)(citations omitted).

[35] *AT&T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 404 (5th Cir. 2001)(emphasis original).

[36] Adams LLC erroneously incorporates the Bankruptcy Court's finding that Rebecca Adams' testimony was implausible as part of its argument. Doc. 9, p. 24. This particular finding by the Bankruptcy Court was made in the section regarding "actual fraud" and not in the section on "false representation." Doc. 21-2, p. 716. Therefore, this discussion is inapplicable to this particular assignment of error.

[37] *Turbo Aleae Investments, Inc. v. Allen C. Borschow, et al.*, 467 B.R. 410, 425 (Bankr. W.D. Tex. Feb. 8, 2012)(citing *Field v. Mans*, 516 U.S. 59, 74-75 (1995)).

circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard."[38]  It incorporates "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases."[39]  As the Bankruptcy Court correctly noted, a creditor who is "the recipient of a fraudulent misrepresentation may justifiably rely on it *unless* its falsity is obvious or there are *'red flags'* indicating such reliance is unwarranted."[40]  Importantly, "[a] plaintiff may not blindly rely upon a misrepresentation, the falsity of which would be obvious to the plaintiff had he or she used [his or] her senses to make a cursory examination or investigation."[41]  Consequently, "if 'under the circumstances, the facts should be apparent to one of [the creditor's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning he is being deceived,' reliance is not justified without further investigation."[42]

The Court finds no error in the Bankruptcy Court's finding that Adams LLC, through its member, Rebecca Adams, failed to show justifiable reliance.  While it is true that Rebecca Adams ("Adams") and Janney had a business relationship that spanned approximately 9 years, and that, in the past, Janney had paid his invoices regularly,[43] the Court concludes that there were red-flags that demonstrate that any reliance by Adams LLC, through its member, Adams, on Janney's misrepresentations about his businesses' finances was unwarranted.

---

[38] *Guion v. Sims (In re Sims)*, 479 B.R. 415, 425 (Bankr. S.D. Tex. 2012)(citing *Field*, 516 U.S. at 71)).
[39] *Field*, 516 U.S. at 71.
[40] *In re Mercer*, 246 F.3d at 418 (quoting *Field*, 516 U.S. at 71-72)(emphasis original).
[41] *Baker v. Sharpe (In re Sharpe)*, 351 B.R. 409, 423 (Bankr. N.D. Tex. 2006)(citing *Field*, 516 U.S. at 71).
[42] *Barvie v. Broadus (In re Broadus)*, 516 B.R. 378, (Bankr. S.D. Miss. 2014)(quoting *In re Mercer*, 246 F.3d at 418)).  *See also, LTSGO, LLC v. Bassil (In re Bassil)*, 349 B.R. 475, 481 (Bankr. E.D. La. 2006)(citing *In re Mercer*, 246 F.3d at 418).
[43] Doc. 21-2, pp. 214-215, 217, 219, and 234.

Adams testified that Janney began having problems staying current on his invoices before June of 2012.[44]  Adams stated that she knew in February of 2013 about Janney's Internal Revenue Service payroll tax debt of approximately $40,000.00.[45]  She further testified that even withholding these payroll taxes "there simply was not enough cash flow" to pay off the payroll tax debt.[46]  During this time period, Adams also testified that "a lot of cash [was] being pulled out of the company," but that she did not know for what purpose or where the funds were going.[47]  She further stated that the amount of cash that was being withdrawn "was getting more and more all the time."[48] The Court finds that, even considering their relationship, these facts should have served as a warning to Adams that she was being deceived, and further investigation of Janney's handling of his and his companies' financial situation was warranted.  And yet, even though Adams knew of these facts, in February of 2013, Adams LLC agreed to enter into another service contract with Janney and his companies to continue providing services, which, over the next three months, provided an additional $30,000.00 in services.[49]  The Court finds that while Adams may have cared about Janney and the success of his businesses,[50] under the circumstances of this case, Adams LLC, through its member Adams, knew of enough red flags such that she was not justified in blindly relying upon Janney's representations about his finances.

This Court finds no error in the Bankruptcy Court's factual finding that Adams' knowledge of dubious business practices involving cash withdrawals and payroll tax debt

---

[44] Doc. 21-2, pp. 292-293.
[45] Doc. 21-2, pp. 290-292; 321.
[46] Doc. 21-2, p. 292.
[47] Doc. 21-2, p. 292.
[48] Doc. 21-2, p. 292.
[49] Doc. 21-2, pp. 320-321.
[50] Doc. 21-2, p. 231.

were significant red flags such that Adams' reliance on Janney's misrepresentations was not justified.

Accordingly, the Court hereby affirms the Bankruptcy Court's finding that Appellant failed to establish that Janney made a false representation rendering its claim nondischargeable under Bankruptcy Code § 523(a)(2)(A).

> B. Whether the Bankruptcy Court erred in concluding that Janney had not committed actual fraud under 11 U.S.C. § 523(a)(2)(A) by withholding financial information from his accountant?

Adams LLC contends that because the Bankruptcy Court applied the wrong legal standard, its finding that Janney had not committed actual fraud under 11 U.S.C. § 523(a)(2)(A) is erroneous.[51] Appellant specifically argues that since the Supreme Court's decision in *Husky International Electronics, Inc. v. Ritz*,[52] "Adams is only required to establish a 'fraudulent conveyance scheme' in order for Janney's debt to Adams to be deemed nondischargeable based upon fraud."[53] Adams LLC contends that it established fraud under *Husky* because the evidence at trial evidence demonstrated Janney's engagement in two fraudulent conveyance schemes for the purpose of shielding himself and his companies from creditors.[54] For the following reasons, the Court finds the holding in *Husky* is inapplicable to Appellant's case.

In its initial decision in *Husky*, the Fifth Circuit held that a representation is a necessary prerequisite for a showing of actual fraud under Section 523(a)(2)(A).[55]

---

[51] The Court reviews whether the Bankruptcy Court applied an improper legal standard *de novo. Lejeune v. JFK Capital Holdings, LLC (In the Matter of" JFK Capital Holdings, LLC)*, 880 F.3d 747, 751 (5th Cir. 2018).

[52] *Husky Int'l Elecs, Inc. v. Ritz*, 136 S.Ct. 1581 (2016)(hereinafter "*Husky*").

[53] Doc. 9, p. 17.

[54] Doc. 9, pp. 19-21; Doc. 18, pp. 6-8.

[55] *Husky Int'l Elecs, Inc. v. Ritz (In re Ritz)*, 787 F.3d 312, 321 (5th Cir. 2015), rev'd and remanded sub nom. *Husky Int'l Elecs., Inc. v. Ritz*, 136 S.Ct. 1581 (2016).

Subsequently, the Supreme Court reversed the Fifth Circuit, finding that "actual fraud" in Section 523(a)(2)(A) should be interpreted to "encompass fraudulent conveyance schemes, even when those schemes do not involve a false representation."[56]  On remand, the Fifth Circuit noted that the Supreme Court's holding reversed Fifth Circuit precedent to the extent that those cases required a representation in order for a debt to be nondischargeable under Section 523(a)(2)(A) for actual fraud.[57]

Unlike the creditor in *Husky*, however, Adams LLC alleged that Janney made actual false representations "with the intent to deceive Adams so that Adams would continue to supply services and to obtain Financial Statements that misrepresented his financial situation, in order to obtain credit from other creditors."[58]  Importantly, Adams LLC did not make any allegations of fraudulent conveyance schemes.  Upon review of the record, this Court finds no error in the Bankruptcy Court's factual finding that Adams LLC failed to prove actual fraud by a preponderance of the evidence.  Because Adams LLC alleged that Janney made actual false representations, the Court finds that *Husky* and its holding regarding fraudulent conveyance schemes is inapplicable to Adams LLC's claim of actual fraud under 11 U.S.C. § 523(a)(2)(A).[59]  Therefore, the Court hereby

---

[56] *Husky*, 136 S.Ct. at 1590.

[57] *Husky*, 832 F.3d 560, 565 n.3 (5th Cir. 2016)("To the extent that *In re Acosta*, *RecoverEdge*, and other prior Fifth Circuit cases required that a debtor make a representation in order for a debt to be nondischargeable under § 523(a)(2)(A), those cases are effectively overruled by the Supreme Court's decision in this case."(citing *Husky*, 136 S.Ct. at 1586)).

[58] Doc. 21-2, p. 16 (Appellant also alleged that Janney's "misrepresentation to Adams as to the number and amount of outstanding debt owed by himself and the Janney companies constitutes fraud," and that Janney "knew the representations to Adams about the number and amount of outstanding debt owed by himself and by the Janney Companies was false at the time that the representations were made." Doc. 21-2, p. 16).

[59] *See*, *Mackenzie Leigh, LLC v. Imam (In re Nardos Imam)*, Case No. 16-33362, 2018 WL 614937 (Bankr. N.D. Tex. Jan. 29, 2018).  The Supreme Court in *Husky* also made clear that even though "actual fraud" does not require misrepresentation, reliance is still a requirement for fraud when a misrepresentation is alleged, as in this case. *Husky*, 136 S.Ct. 1590-91.

affirms the Bankruptcy Court's finding that the Appellant failed to prove that Janney committed actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

> C. Whether the Bankruptcy Court erred in holding that Adams LLC failed to meet its burden of proof under 11 U.S.C. § 727(a)(3), in establishing that Debtor failed to maintain adequate books and records? Specifically, whether the Bankruptcy Court's conclusion that "Adams presented no evidence to support a finding that any of the information Janney provided in his bankruptcy filing was incomplete or inaccurate" was erroneous?[60]

Section 727(a)(3) states that the court shall grant the debtor a discharge, unless "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."[61] The creditor has the initial burden of proving that "(1) the debtor fail[ed] to keep or preserve financial records, and (2) the failure [made] it impossible for the creditor to discern the debtor's financial condition."[62] "Section 727(a)(3) is not a prescription of a 'rigid standard of perfection' in record-keeping, but requires that the debtor 'present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past.'"[63]

---

[60] Findings of fact are reviewed for clear error. To the extent Adams LLC attempts to argue that the Bankruptcy Court applied the wrong legal standard, such an argument shall not be considered as it was not properly asserted as an issue on appeal.

[61] 11 U.S.C. §727(a)(3).

[62] *Buescher v. First United Bank & Trust (In re Buescher)*, 783 F.3d 302, 307 (5th Cir. 2015)(citing *In re Dennis*, 330 F.3d at 703)).

[63] *The Cadle Co. v. Hughes (In re Hughes)*, 354 B.R. 801, 809 (Bankr. N.D. Tex. 2006)(*quoting First Nat'l Bank of Claude, Tex. v. Williams (In re Williams)*, 62 B.R. 590, 593 (Bankr. N.D. Tex. 1986)).

Ultimately, the Bankruptcy Court had "'wide discretion'" in its determination of whether the debtor maintained adequate records, and its decision constitutes "finding[s] of fact reviewed for clear error."[64]

Appellant takes issue with the Bankruptcy Court's conclusion that "[n]o evidence supports a finding that any of the information Janney provided in his bankruptcy filings was incomplete or inaccurate."[65] Appellant contends that certain evidence introduced at trial showed that Janney failed to disclose his ownership in three wholly owned business entities on his Bankruptcy Schedules or Statement of Financial Affairs.[66] Appellant also argues that while Janney's Bankruptcy Schedules showed that Physician's Choice Physical Therapy WBR, LLC ("WBR") closed in June of 2012, the trial evidence, which included Rebecca Adams' testimony and receipts of cash withdrawals totaling $67,825.00 from WBR, showed otherwise.[67] According to Adams LLC, these unexplainable inaccuracies should have been sufficient for the Bankruptcy Court to deny Janney's bankruptcy discharge.

The Court is presented with an obstacle that it cannot overcome when considering Adams LLC's evidentiary challenge on this particular claim. While Appellant directs the Court's attention to the actual Bankruptcy Schedules and the Statement of Financial Affairs themselves, these items were not made part of trial record in *Adams v. Janney*.[68]

---

[64] *In re Dennis*, 330 F.3d at 703 (quoting *Goff v. Russell Co. (In re Goff)*, 485 F.2d at 200, 202 (5th Cir. 1974)).

[65] Doc. 21-2, p. 697. The Court notes that the Bankruptcy Court did qualify this conclusion with the following: "Discrepancies between the schedules and statements Janney filed in his bankruptcy case and information in his own and his companies' records do not on this record support a finding that Janney failed to maintain adequate information justifying loss of his discharge, especially where the plaintiff helped prepare and maintain the very records it contends were inadequate.") Doc. 21-2, p. 698.

[66] Doc. 9, p. 27; Doc. 18, p. 13.

[67] Doc. 9, p. 27; Doc. 18, p. 13.

[68] It appears that Bankruptcy Schedules B and F, as amended, were admitted into evidence as part of the related but separate Adversarial Proceeding No. 15-1027, *BBI Architectural Services v. Todd T. Janney,*

Because these documents were not admitted into evidence at the trial, the documents themselves are not considered as evidence on appeal.[69]  However, trial testimony was offered regarding these documents and considered by the Bankruptcy Court.[70]  Therefore, the Court's review is limited to the testimony offered during the trial pertaining to these documents.

During the trial, Appellant's counsel questioned Janney about three businesses in which he held an ownership interest that were not disclosed in his Schedule B form.[71]  In response, Janney testified that it was his belief that these entities were no longer active, and, in one particular case, he testified that he was unsure if the business ever was active.[72]  Also during the trial, evidence regarding Physicians' Choice Physical Therapy WBR, LLC was introduced.  Both Rebecca Adams and Janney offered conflicting testimony as to whether this particular clinic was open and operating in 2013.[73]  Additionally, the testimony also evinced that the $67,825.00 cash withdrawal from Physicians' Choice Physical Therapy WBR, LLC was disclosed by the Janneys to their Chapter 7 Trustee.[74]

Considering the Bankruptcy Court's conclusions and ultimate finding, it appears to the Court that the Bankruptcy Judge found that Janney's explanations and testimony

---

*Sr.* Doc. 21-2, pp. 440, 503-504.  These exhibits were only "marked" during Adversarial Proceeding No. 15-1026, Doc. 21-2, p. 211.  To the extent Adams relies upon the "Statement of Financial Affairs," such an exhibit was not introduced or admitted at the adversary trial at issue.  Doc. 21-2, p. 211.  It is also worth noting that Appellant did not request that Pacer Doc. 2 of Debtor Todd Janney's general bankruptcy case, Number 14-11278 be designated as part of the appellate record.  Doc. 20, pp. 1-2.

[69] *See, Texas Commerce Bank Nat'l Ass'n v. Licht (In re Pengo Indus., Inc.*, 129 B.R. 104, 109 (Bankr. N.D. Tex. 1991)(citation omitted).

[70] *See, e.g.*, Doc. 21-2, p. 697, n. 41.

[71] Doc. 21-2, pp. 360-364.  The entities were Rehabilitation Therapy Management, Inc.; Physicians' Choice Physical Therapy of Livingston Parish, Inc.; and Physicians' Choice Physical Therapy of West Baton Rouge, Inc.

[72] Doc. 21-2, pp. 361-364.

[73] Doc. 21-2, pp. 260; 389-391; 415-417; 427-428.

[74] Doc. 21-2, p. 389.

regarding the discrepancies related to the Schedule B form and the status of Physicians' Choice Physical Therapy WBR, LLC in 2013 to be more credible than the testimony offered by Rebecca Adams.   Because testimony was offered on each of the evidentiary challenges being made by Appellant, this Court, sitting in an appellate capacity, gives deference to the Bankruptcy Court's determinations of witness credibility.[75]   Giving the Bankruptcy Court's credibility findings the deference they are due, the Court finds that the Bankruptcy Court's conclusions regarding the accuracy and completeness of the information that Janney provided in his bankruptcy filings was not clearly erroneous. Based on the record before it, the Bankruptcy Court correctly found that the evidence did not support a finding that any of the information provided by Janney in his bankruptcy filings was inaccurate or incomplete.   Accordingly, the Bankruptcy Court's finding that that Adams LLC  failed to satisfy its burden of proof to deny Janney's discharge for failure to maintain adequate books and records under 11 U.S.C. § 727(a)(3) is hereby affirmed.

> D.   Whether the Bankruptcy Court erred in holding that Adams LLC failed to meet its burden of establishing Janney's failure to adequately explain the loss of his personal assets in order for his discharge be denied under 11 U.S.C. § 727(a)(5)?[76]

Pursuant to Section 727(a)(5), "[t]he court shall grant the debtor a discharge, unless . . . the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency

---

[75] *In re Dennis*, 330 F.3d at 701(quoting *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992))("[W]e must give 'due regard . . . to the opportunity of the [bankruptcy] court to judge the credibility of the witnesses.'").

[76] As a sub-assignment of error, Adams LLC raised the following issue: "Whether, absent the standing issue, the Bankruptcy Court erred in finding that Adams [LLC] failed to introduce sufficient evidence to pierce the veil of Janney's wholly owned limited liability companies." Doc. 20, p. 4. The Bankruptcy Court's holding on Adams LLC's Section 727(a)(5) claim hinged on a lack of standing to assert a veil piercing claim. Because the Bankruptcy Court determined that Adams LLC lacked standing, it did not determine whether or not Adams LLC produced sufficient evidence to pierce the corporate veil of Janney's companies.  In other words, this was not a finding of the Bankruptcy Court and it is therefore, not properly raised as an issue on appeal.  Furthermore, because this Court agrees with the Bankruptcy Court's application of the law, the Court need not reach this issue.

of assets to meet the debtor's liabilities."[77]  The initial burden of proof rests with the party objecting to discharge.[78]  "A bankruptcy court's determination that a debtor has or has not satisfactorily explained a loss of assets is a factual finding."[79]  However, the court reviews questions of standing *de novo*.[80]  "If the bankruptcy court 'expressly or implicitly resolved any factual disputes' in resolving a standing question, the court reviews such findings for clear error."[81]

Initially, Adams LLC argues that the Bankruptcy Court erroneously concluded that Adams LLC lacked standing to assert "alter ego" and "reverse ego" claims without examining Janney's pre-petition fraudulent conveyance of business assets.[82]  Not only does Adams LLC fail to offer any legal support for its position, but, as previously discussed in this *Ruling*, Appellant never asserted a fraudulent conveyance claim.[83]  Therefore, the Court finds no merit in the foregoing argument.

More generally, Adams LLC contends that the Bankruptcy Court erroneously found that Adams LLC lacked standing to assert its claim for discharge under Section 727(a)(5), because "as a creditor, Adams [LLC] has standing to argue that Janney's discharge should be denied under Section 727(a)(5) regardless of 'veil piercing.'"[84]  Although

---

[77] 11 U.S.C. §727(a)(5).

[78] *Baton Rouge Neonatal Assoc. v. Ward (In re Ward)*, Case No. 01-13035, 02-1054, 2003 WL 24027463, *1 (Bankr. M.D.La. Jan. 23, 2003)(citing Fed. R. Bank. P. 4005).

[79] *Cadle Co. v Andrews (In re Andrews)*, 98 Fed.Appx. 290, 295 (5th Cir. 2004)(citation omitted).

[80] *Compton v. Anderson, et al. (In re MPF Holdings US LLC)*, 701 F.3d 449, (5th Cir. 2012)(citing *Spicer v. Laguna Madre Oil & Gas II, LLC (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 550 (5th Cir. 2011)).

[81] *Id.*

[82] Doc. 9, p. 30.

[83] The Court construes this argument as encompassing the following sub-issue presented on appeal: "Whether the Bankruptcy Court erred in failing to consider the Debtor's ownership interest in his wholly owned limited liability companies to constitute assets of the Debtor's bankruptcy estate and as such, the Debtor's prepetition transfer of all assets contained within those companies, for no consideration, reduced the value of the Debtor's bankruptcy estate assets by diminishing the value of the Debtor's ownership interest in those limited liability companies, which the Debtor was unable to explain, therefore, the requirements of Section 727(a)(5) were met."

[84] Doc. 9, p. 30.

Appellant reiterates this argument no less than three times in varying ways, Adams LLC fails to cite to any legal authority or jurisprudence to support its argument on appeal.[85] The Court further observes that before the Bankruptcy Court, Adams LLC actually argued that it had standing to pierce the corporate veil "for the purpose of objecting to debtor's discharge and dischargeability."[86] Adams LLC never argued that it did not need to have standing to asserts its Section 727(a)(5) claim. Nonetheless, the Court will consider the Bankruptcy Court's finding of fact and application of law under a *de novo* review.

Adams LLC argued that Janney should be denied discharge under Section 727(a)(5) because he could not explain the loss of assets that occurred after he transferred certain Janney entities to his mother, Ms. Mohamed, shortly before he filed his bankruptcy petition. In January or March of 2013, Janney executed a Sales Agreement with his mother, for $76,000.00 as satisfaction for an alleged debt. Pursuant to the Sales Agreement, Janney transferred ownership of the Walker, Plaquemine, and Addis locations of Physicians' Choice Physical Therapy LLC. Pursuant to the terms of the Sale Agreement, "[a]ll equipment, furniture, computers, electronics, fixtures and

---

[85] Adams LLC reiterates its argument in various ways as follows: "The Bankruptcy Court failed to consider Adams' standing, outside the scope of piercing the corporate veil, to assert an objection to discharge against Janney for his actions in depleting the value of his stock interest by transferring his wholly owned corporate assets to other entities or relatives without consideration;" "In Adams' case, the Bankruptcy Court simply concluded that Adams lacked standing because Janney's scheme impacted the value of his wholly-owned companies as opposed to Janney personally;" and "Adams, as bankruptcy creditor, does not need to pierce the corporate veil in order to attack Janney's fraudulent conveyance of assets for no consideration, resulting in the diminished value of his ownership interest in his wholly owned companies." Doc. 9, pp. 30-31. See also, Doc. 18, p. 15 ("Adams, as a bankruptcy creditor, is not required to pierce or reverse pierce the corporate veil in order to attack Janney's fraudulent conveyance of his companies' assets, resulting in the diminution of his ownership interest in these wholly owned companies."

[86] Doc. 21-2, pp. 464-465 (argument at trial); Doc. 21-2, p. 621-623. (Adams Inc.'s Post Trial Memorandum of Law). The Court further notes that ordinarily a district court "will not allow a party to raise an issue for the first time on appeal merely because a party believes that he might prevail if given the opportunity to try a case again on a different theory." *Ferrell*, 398 B.R. at 863.

supplies" at the three locations was included in the transfer, as well as "assets, patient load and accounts receivable."[87]

The evidence in the record evinces that the assets Janney transferred to his mother before he filed his bankruptcy petition belonged to his businesses, not to Janney himself. In other words, these were not Janney's personal assets. Louisiana law clearly establishes that corporations and limited liability companies, such as Janney's businesses, are juridical persons.[88] Therefore, the assets of Janney's businesses were unavailable to pay Janney's creditors, so the prepetition transfer of these assets do not fall within 11 U.S.C. § 727(a)(5).

Corporations and limited liability companies are distinct from their members.[89] "This distinction between corporation and shareholder insulates a corporation's shareholders from personal liability for the corporation's debts. Louisiana courts also recognize that, under certain circumstances, the corporate veil may be pierced to impose personal liability on a corporation's owners."[90] "Because of the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances."[91]

"[A]lter ego and reverse veil piercing claims 'belong[ ] to the debtor,' are 'property of the estate,' lie within the control of the Trustee, and generally may not be brought by a creditor."[92] In certain circumstances, however, "[a] creditor may be able to seek a judicial

---

[87] Doc. 21-3, p. 213.
[88] La. C.C. art. 24.
[89] La. C.C. art. 24; *see also, Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1167 (La. 1991).
[90] *Debaillon v. Alfred (In re Patricia Anderson)*, 539 B.R. 277, 287 (Bankr. W.D. La. 2015)(internal citations and quotations omitted).
[91] *Sevenhills Healthcare, LLC v. St. James Behavioral Health Hospitals*, Civil Action Nos. 2015-1000, 2015-1001(La. App. 1 Cir. 5/5/2016), 2016 WL 2610631 at *3 (quoting *Riggins*, 590 So.2d 1167-68)).
[92] *Judgment Factors, LLC v. Packer (In re Packer*) 816 F.3d 87, 92 (5th Cir. 2016)(citations omitted).

declaration that corporate entities constitute the alter egos of the debtor."[93]  To pursue an alter ego claim, a creditor must show that the following conditions are met: "(1) the claim must be colorable; (2) the claim must be brought on behalf of the estate; and (3) the Trustee must have unjustifiably refused to pursue the claim."[94]  If the creditor makes such a showing, then the bankruptcy court "may, in its discretion and after considering the benefit to the estate, grant the creditor leave to pursue the claim on behalf of the estate."[95]

Based on the foregoing, the Court finds that the Bankruptcy Court correctly required Adams LLC to show that it had standing to pierce the Janney companies' corporate veil for the purposes of objecting to Janney's discharge under Section 727(a)(5).  The record shows that Adams LLC only made claims on its own behalf, not on behalf of the estate.  The record is also devoid of any evidence that shows that the Chapter 7 Trustee Dwayne Murray "unjustifiably refused to pursue the claim."  Thus, like the Bankruptcy Court, this Court too finds that Adams LLC failed to establish standing to pursue a veil piercing action against Janney.

Lastly, the Court finds no merit in Adams LLC's claim that the Bankruptcy Court "made an error of law in its failure to consider Adams [LLC's] underlying complaint of the fraudulent transfer of activities, outside of the veil piercing theory."[96]  Specifically, the Court finds Appellant's reliance on *Judgment Factors, LLC v. Packer (In re Packer)*, in this instance to be misplaced.[97]  Adams LLC asserts that in finding that the creditor lacked standing to assert a veil piercing or alter ego claimed, the *In re Packer* bankruptcy court

---

[93] *Id.*
[94] *Id.* (quoting *La. World Exposition, Inc. v. Fed. Ins. Co.* (*In re La. World Exposition, Inc.*, 832 F.2d 1391, 1397 (5th Cir. 1987)).
[95] *Id.* (quoting *In re La. World Exposition, Inc.*, 832 F.2d at 1397).
[96] Doc. 9, p. 31.
[97] *In re Packer*, 816 F.3d 87 (5th Cir. 2016).

examined the actions that the creditor argued were underlying the veil piercing/alter ego theories as actions that might warrant the denial of discharge under Section 727(a).[98] This Court has reviewed the section of *In re Packer* cited by Adams LLC and finds otherwise. There, the Fifth Circuit simply explained that during the bankruptcy proceeding the creditor had predicated its alter ego and reverse veil piercing theories on the debtor's behavior which would justify a denial of discharge under Section 727(a).[99] In other words, there was no so-called "examination" of any actions underlying the veil piercing or alter ego theories. Hence, the Court finds no merit in Adams LLC's fraudulent conveyance or *In re Packer* arguments on appeal.

Accordingly, the Court hereby affirms the Bankruptcy Court's finding that Adams LLC failed to prove that Janney could not adequately explain the loss of his personal assets to mandate denial of Janney's discharge under 11 U.S.C. § 727(a)(5).

## V. CONCLUSION

For the foregoing reasons, the September 26, 2016 Judgment of the Bankruptcy Court in the Adversary Proceeding, *In re: Todd T. Janney Sr. and Shannon C. Janney*, Adv. No. 15-01026 is hereby affirmed.

Signed in Baton Rouge, Louisiana on <u>March 27, 2018.</u>

<u>                            </u>
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[98] Doc. 9, p. 31, citing to page 92 of *In re Packer*.
[99] *In re Packer*, 816 F.3d at 92.